## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN THOMPSON, Individually and On Behalf of All Others Similarly Situated, | )<br>)<br>) |
| Plaintiff, | ) Case No. _____<br>) |
| v. | ) JURY TRIAL DEMANDED<br>) |
| ANADARKO PETROLEUM CORPORATION, R. A. WALKER, ANTHONY R. CHASE, DAVID E. CONSTABLE, H. PAULETT EBERHART, CLAIRE S. FARLEY, PETER J. FLUOR, JOSEPH W. GORDER, JOHN R. GORDON, SEAN GOURLEY, MICHAEL K. GRIMM, MARK C. MCKINLEY, ERIC D. MULLINS, and ALEXANDRA PRUNER, | ) CLASS ACTION<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.      This action stems from a proposed transaction announced on May 9, 2019 (the "Proposed Transaction"), pursuant to which Anadarko Petroleum Corporation ("Anadarko" or the "Company") will be acquired by Occidental Petroleum Corporation ("Parent") and Baseball Merger Sub 1, Inc. ("Merger Sub," and collectively with Parent, "Occidental").

2.      On May 9, 2019, Anadarko's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Occidental. Pursuant to the terms of the Merger Agreement, Anadarko's stockholders will receive $59.00 in cash and 0.2934 of a share of Parent common stock for each

share of Anadarko common stock they own.

3. On July 11, 2019, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction, which scheduled a stockholder vote on the Proposed Transaction for August 8, 2019.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Anadarko common stock.

9. Defendant Anadarko is a Delaware corporation and maintains its principal executive offices at 1201 Lake Robbins Drive, The Woodlands, Texas 77380. Anadarko's common stock is traded on the New York Stock Exchange under the ticker symbol "APC."

10. Defendant R. A. Walker is Chief Executive Officer and Chairman of the Board of the Company.

11. Defendant Anthony R. Chase is a director of the Company.

12. Defendant David E. Constable is a director of the Company.

13. Defendant H. Paulett Eberhart is a director of the Company.

14. Defendant Claire S. Farley is a director of the Company.

15. Defendant Peter J. Fluor is a director of the Company.

16. Defendant Joseph W. Gorder is a director of the Company.

17. Defendant John R. Gordon is a director of the Company.

18. Defendant Sean Gourley is a director of the Company.

19. Defendant Michael K. Grimm is a director of the Company.

20. Defendant Mark C. McKinley is a director of the Company.

21. Defendant Eric D. Mullins is a director of the Company.

22. Defendant Alexandra Pruner is a director of the Company.

23. The defendants identified in paragraphs 10 through 22 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

24. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Anadarko (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

25. This action is properly maintainable as a class action.

26. The Class is so numerous that joinder of all members is impracticable. As of May 2, 2019, there were approximately 502,052,625 shares of Anadarko common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

27. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

28. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

29. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

30. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

31. Anadarko explores for, acquires, and develops oil and natural gas resources vital to

the world's health and welfare.

32. As of year-end 2018, the Company had 1.47 billion barrels-equivalent of proved reserves, making it one of the world's largest independent exploration and production companies.

33. On May 9, 2019, Anadarko's Board caused the Company to enter into the Merger Agreement with Occidental.

34. Pursuant to the terms of the Merger Agreement, Anadarko's stockholders will receive $59.00 in cash and 0.2934 of a share of Parent common stock for each share of Anadarko common stock they own.

35. According to the press release announcing the Proposed Transaction:

Anadarko Petroleum Corporation (NYSE: APC) today announced that it has entered into a definitive merger agreement with Occidental Petroleum Corporation under which Occidental will acquire all of the outstanding shares of Anadarko for consideration consisting of $59.00 in cash and 0.2934 of a share of Occidental common stock per share of Anadarko common stock. . . .

The transaction is expected to close in the second half of 2019, subject to approval by Anadarko shareholders, regulatory approvals and other customary closing conditions. Occidental has obtained committed financing for the entire cash portion of the aggregate transaction, and completion of the transaction will not require or be conditioned upon the receipt of any vote or other approval by Occidental's stockholders.

Goldman Sachs & Co. LLC, Evercore, and Jefferies LLC are acting as financial advisors to Anadarko. Wachtell, Lipton, Rosen & Katz is acting as legal advisor to Anadarko.

36. The Merger Agreement contains a "no solicitation" provision that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals. Sections 7.8(a) and (b) of the Merger Agreement provide, in relevant part:

The Company and its Subsidiaries will not, and the Company will direct and use its reasonable best efforts to cause its and its Subsidiaries' respective officers, directors, employees, investment bankers, consultants, attorneys, accountants, agents and other representatives not to, directly or indirectly, take any action to solicit, initiate, or knowingly encourage or facilitate the making of any Acquisition Proposal (including without limitation by amending, or granting any waiver under, Article NINTH of the Company Charter or Section 203 of the DGCL) or any inquiry with respect thereto or engage in discussions or negotiations with any Person with respect thereto (except to notify such Person of the existence of the provisions of this Section 7.8), or disclose any nonpublic information or afford access to properties, books or records to any Person that has made, or to the Company's knowledge is considering making, any Acquisition Proposal, or approve or recommend, or propose to approve or recommend, or execute or enter into any letter of intent, agreement in principle, merger agreement, option agreement, acquisition agreement or other similar agreement relating to an Acquisition Proposal, or propose publicly or agree to do any of the foregoing relating to an Acquisition Proposal. . . .

The Company (x) shall, and shall cause its Subsidiaries to, immediately cease and cause to be terminated and shall use reasonable best efforts to cause its and their officers, directors, employees, investment bankers, consultants, attorneys, accountants, agents and other representatives to, immediately cease and cause to be terminated, all discussions and negotiations, if any, that have taken place prior to the date hereof with any Persons with respect to any Acquisition Proposal or the possibility thereof, (y) shall promptly request each Person, if any, that has executed a confidentiality agreement within the nine (9) months prior to the date hereof in connection with its consideration of any Acquisition Proposal to return or destroy all confidential information heretofore furnished to such Person by or on behalf of it or any of its Subsidiaries and (z) immediately terminate all physical and electronic data room access for such Person and their representatives to diligence or other information regarding the Company or any of its Subsidiaries. The Company shall not modify, amend or terminate, or waive, release or assign, any provisions of any confidentiality or standstill agreement (or any similar agreement) to which the Company or any of its Subsidiaries is a party relating to any such Acquisition Proposal and shall enforce the provisions of any such agreement; provided that the Company shall be permitted on a confidential basis, upon written request by a relevant party thereto or without prior notice to Parent disclosing the party and the circumstances, release or waive any standstill obligations solely to the extent necessary to permit the party referred therein to submit an Acquisition Proposal to the Board of Directors of the Company on a confidential basis. The Company shall provide written notice to Parent of waiver or release of any standstill by the Company, including disclosure of the identities of the parties thereto and circumstances relating thereto.

37. Additionally, the Company must promptly advise Occidental of any proposals or inquiries received from other parties. Section 7.8(b) of the Merger Agreement states, in relevant part:

> In the event that on or after the date of this Agreement the Company receives an Acquisition Proposal, or any request for nonpublic information relating to the Company or any Subsidiary of the Company or for access to the properties, books or records of the Company or any Subsidiary of the Company by any Person that has made, or to the Company's knowledge may be considering making, an Acquisition Proposal, the Company will (A) promptly (and in no event later than twenty-four (24) hours after receipt thereof) notify (which notice shall be provided orally and in writing and shall identify the Person making such Acquisition Proposal or request and set forth the material terms thereof) Parent thereof, (B) keep Parent reasonably and promptly informed of the status and material terms of (including with respect to changes to the status or material terms of) any such Acquisition Proposal or request and (C) as promptly as practicable (but in no event later than twenty-four (24) hours after receipt) provide to Parent unredacted copies of all material correspondence and written materials (whether or not electronic) sent or provided to the Company or any of its Subsidiaries that describes any terms or conditions thereof, including any proposed transaction agreements (along with all schedules and exhibits thereto and any financing commitments related thereto), as well as written summaries of any material oral communications relating to the terms and conditions thereof.

38. Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to change its recommendation of the Proposed Transaction under extremely limited circumstances, and grants Occidental a "matching right" with respect to any "Superior Proposal" made to the Company. Section 5.2(b) of the Merger Agreement provides:

> (i) The Board of Directors of the Company shall be permitted, in response to a Superior Proposal received after the date of this Agreement and not resulting from a breach of this Section 5.2 or Section 7.8, to not make the Company Recommendation, or to withdraw or modify in a manner adverse to Parent the Company Recommendation, or to cause the Company to terminate this Agreement pursuant to Section 9.1(f), in each case, only if and to the extent that all of the following conditions are met: (A) the Company Stockholder Approval has not been obtained; (B) the Board of Directors of the Company determines in good faith, after consulting with outside legal counsel, that making the Company Recommendation or failing to take such action would be reasonably likely to be inconsistent with the directors' exercise of their fiduciary duties under applicable law; (C) before taking any such action, the Company promptly gives Parent written notice advising Parent

of the decision of the Board of Directors of the Company to take such action (a "Superior Proposal Notice"), including the reasons therefor and specifying the material terms and conditions of the applicable Acquisition Proposal and the identity of the Person making such Acquisition Proposal (and the Company will also promptly give Parent such a notice with respect to any subsequent change in such proposal) and the Company has given Parent at least four (4) Business Days (as modified, extended or continued by this Section 5.2(b)(i), the "Superior Proposal Match Period") after delivery of such notice to propose revisions to the terms of this Agreement (or to make another proposal) in response to such Acquisition Proposal and during such period has made its representatives reasonably available to negotiate with Parent (to the extent Parent wishes to negotiate) with respect to such proposed revisions or other proposal, if any (it being understood and agreed that any amendment or modification (other than immaterial amendments or modifications) of such Acquisition Proposal shall require a new notice period with a new Superior Proposal Match Period of three (3) Business Days); and (D) the Board of Directors of the Company determines in good faith that such Acquisition Proposal constitutes a Superior Proposal (as defined in Section 7.8(b)) at the end of such Superior Proposal Match Period after consultation with, and taking into account the advice of, a financial advisor of nationally recognized reputation and outside legal counsel, as well as any revisions to the terms of the Merger or this Agreement proposed by Parent after being notified pursuant to this Section 5.2(b)(i).

39. The Merger Agreement also provides for a "termination fee" of $1 billion payable by the Company to Occidental if the Individual Defendants cause the Company to terminate the Merger Agreement.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

40. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

41. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

42. First, the Proxy Statement omits material information regarding the Company's and Occidental's financial projections.

43. With respect to the Company's financial projections, the Proxy Statement fails to disclose, for each set of projections: (i) all line items used to calculate consolidated EBITDAX;

(ii) all line items used to calculate unlevered free cash flow; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

44. With respect to Occidental's financial projections, the Proxy Statement fails to disclose, for each set of projections: (i) all line items used to calculate consolidated EBITDAX; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

45. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

46. Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisors in connection with the Proposed Transaction, Evercore Group L.L.C. ("Evercore") and Goldman Sachs & Co. LLC ("Goldman").

47. With respect to Evercore's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) the ranges of terminal values for Anadarko; (iii) Evercore's basis for applying an assumed perpetuity growth rate range of 1.5% to 2.5% and terminal year enterprise value to last-twelve-month ("LTM") EBITDAX multiples ranging from 5.5x to 6.5x to estimated 2025 EBITDAX; (iv) the individual inputs and assumptions underlying the discount rates ranging from 9.0% to 10.0%; (v) Anadarko's net debt; and (vi) the fully diluted outstanding shares of Anadarko common stock.

48. With respect to Evercore's Premia Paid Analysis, the Proxy Statement fails to disclose: (i) the transactions observed by Evercore in the analysis; and (ii) the premiums paid in the transactions.

49. With respect to Evercore's Analysts' Price Targets analysis, the Proxy Statement fails to disclose: (i) the price targets observed by Evercore in the analysis; and (ii) the sources thereof.

50. With respect to Goldman's Illustrative Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) the individual inputs and assumptions underlying the discount rates used by Goldman in the analysis; (iii) the range of illustrative terminal values for Anadarko; (iv) Goldman's basis for applying terminal year multiples of enterprise value to LTM EBITDAX ranging from 5.0x to 6.5x to estimated EBITDAX of Anadarko for 2025 and perpetuity growth rates ranging from negative 0.6% to positive 2.3%; (v) the net debt of Anadarko; (vi) the midpoint valuation of the non-controlling interests in Western Midstream Partners, L.P.; (vii) the estimated distributions to Western Midstream Partners, L.P.'s unitholders for the period from April 1, 2019 to December 31, 2025; (viii) the range of illustrative terminal values for Western Midstream Partners, L.P.; (ix) Goldman's basis for applying LTM dividend yields ranging from 7.0% to 9.0% to the estimated distributions to Western Midstream Partners, L.P.'s unitholders in 2025; and (x) the fully diluted shares of Anadarko common stock outstanding.

51. With respect to Goldman's Illustrative Present Value of Future Stock Price Analysis, the Proxy Statement fails to disclose: (i) Goldman's basis for applying illustrative one-year forward price to CFPS multiples of 3.5x to 5.5x to estimates of the CFPS of Anadarko for 2020, 2021, 2022, 2023, 2024, and 2025; and (ii) the individual inputs and assumptions underlying the discount rate of 10.8%.

52. With respect to Goldman's Illustrative Present Value of Future Stock Price – Occidental Pro Forma, the Proxy Statement fails to disclose: (i) Goldman's basis for applying

illustrative one-year forward price to CFPS multiples of 3.5x to 5.5x to estimates of the CFPS of Occidental on a pro forma basis for each of 2020, 2021, and 2022; (ii) the individual inputs and assumptions underlying the discount rate of 9.0%; and (iii) the estimated dividends to be paid per share of Occidental common stock on a pro forma basis.

53. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

54. Third, the Proxy Statement omits material information regarding Evercore's engagement as well as the engagement of the Company's additional financial advisor, Jefferies LLC ("Jefferies").

55. The Proxy Statement fails to disclose the timing and nature of the past services Evercore provided to Anadarko and its affiliates.

56. The Proxy Statement also fails to disclose the terms of Jefferies' engagement. Among other things, the Proxy Statement fails to disclose the amount of compensation Jefferies will receive in connection with its engagement, as well as the amount of Jefferies' compensation that is contingent upon consummation of the Proposed Transaction. Further, the Proxy Statement fails to disclose whether Jefferies has performed past services for any parties to the Merger Agreement or their affiliates, as well as the timing and nature of such services and the amount of compensation received by Jefferies for such services.

57. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

58. The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Recommendations of the Anadarko Board of Directors and Its Reasons for the Transaction; (iii) Opinions of Anadarko's Financial Advisors; and (iv) Certain Unaudited Prospective Information.

59. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Anadarko**

60. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

61. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Anadarko is liable as the issuer of these statements.

62. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

63. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

64. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate

12

disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

65. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

66. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

67. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

68. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

69. The Individual Defendants acted as controlling persons of Anadarko within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Anadarko and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

70. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

71.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

72.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

73.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

  D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

  E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

  F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: July 23, 2019       **RIGRODSKY & LONG, P.A.**

            By: */s/ Gina M. Serra*
              Seth D. Rigrodsky (#3147)
              Brian D. Long (#4347)
              Gina M. Serra (#5387)
**OF COUNSEL:**        300 Delaware Avenue, Suite 1220
              Wilmington, DE 19801
**RM LAW, P.C.**         Telephone: (302) 295-5310
Richard A. Maniskas       Facsimile: (302) 654-7530
1055 Westlakes Drive, Suite 300   Email: sdr@rl-legal.com
Berwyn, PA 19312       Email: bdl@rl-legal.com
Telephone: (484) 324-6800     Email: gms@rl-legal.com
Facsimile: (484) 631-1305
Email: rm@maniskas.com     *Attorneys for Plaintiff*